## Kentucky-West Virginia Gas Co. v. Cornett.

Feb. 2, 1943.

Combs & Combs for appellant.

J. B. Clark for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming in part and reversing in part.

Appellee, Albert Cornett, and his wife, Edna Cornett, executed to R. F. Graf an oil and gas lease on two tracts of land in Martin county for a term of five years and as long thereafter as oil, gas, or gasoline was produced in paying quantities. The lease was dated October 25, 1926, and provided that the lessee should commence a well on the premises January 1, 1927, or thereafter pay the lessor at the rate of $1 per acre per annum each three months in advance until a well was completed or the lease was surrendered, and the completion of one well was to operate as a full liquidation of the obligation to pay delay rental during the remainder of the term of the lease. Should a well be found producing gas only the lessor was to be paid at the rate of $300 per annum so long as the gas was used or sold therefrom, payable quarterly while so marketed or so used. The lease described the land in two tracts; one containing 20 acres conveyed to Albert Cornett by his mother, Ar-

mentia Cornett, and one containing 47 acres inherited by Albert Cornett from his father, Wilburn Cornett. The two tracts are separated by Cold Water Fork of Rockcastle Creek. The lessee, R. F. Graf, assigned the lease to appellant, Kentucky-West Virginia Gas Company, and the delay rentals, at the rate of $67 annually, were paid to appellee during the 5-year term. By a writing dated April 8, 1930, the lessors extended the term of the lease for 5 years from November 25, 1931, "subject to the payment of the same rentals during said extension as are provided for in the said lease, for delay in completing a well on the land embraced in said lease, or until the said lease shall be surrendered, and also under and subject to all the other covenants, stipulations, conditions, and provisions which are contained in the said lease." The lease contained this provision:

"If the recited acreage or area be found to be less than the true quantity of land in said premises, lessee on demand made shall pay up arrears or deficiency in rental payments on the basis of the excess of the true over the said recited acreage, and thereafter pay the rental under this lease on the basis of the true acreage."

Delay rentals were paid by appellant at the rate of $67 annually until it completed a well on the 47-acre tract on September 25, 1936. Appellant concluded that the well would not produce gas in paying quantities if it should be required to pay the royalty of $300 per year provided in the lease, and it sent its chief field agent, E. E. Clark, to negotiate with appellee and to obtain a royalty reduction agreement to operate the well on an annual royalty of $100 instead of $300. After considerable discussion and after appellee had discussed the matter with his wife, a reduction agreement was signed September 25, 1936, by appellee and his wife, by which appellee agreed to accept $150 a year instead of $300, as provided in the original lease, if appellant would drill a well on the 20-acre tract or surrender it within three months. Appellant accepted the agreement, and by writing dated October 5, 1936, surrendered the 20-acre tract to appellee and his wife. Thereafter appellant tendered to appellee the royalty at the rate of $150 annually, but appellee declined to accept it and demanded payment at the rate of $300 a year. He had the two tracts of land surveyed by Rufus M. Reed, county surveyor, whose survey disclos-

ed that the tract referred to in the lease as the 20-acre tract contained only 12 acres and the tract referred to as the 47-acre tract, on which the well was located, contained 62.7 acres, or a total of 74.7 acres. On March 20, 1940, appellee brought this action to recover $72, the amount of delay rentals alleged to be due, and the further sum of $1,150, the amount of royalties due at the rate of $300 per annum. By its answer appellant denied the material allegations of the petition, and pleaded the reduction agreement of September 25, 1936, and its offer to pay the royalty according to that agreement and appellee's refusal to accept same. In a reply filed June 16, 1941, appellee denied executing the reduction agreement, but admitted he had refused to accept the $150 annual royalty. After proof had been taken and after the case had been submitted, the appellee filed a motion to set aside the order of submission and tendered and offered to file an amended petition in equity. The motion was sustained, and the amended petition in equity was ordered filed. In his amended petition appellee alleged fraud in the procurement of the reduction agreement, and he prayed for its cancelation. Before judgment was rendered an agreed order was entered controverting of record the amended petition. The court entered a judgment canceling the reduction agreement and adjudging that the appellee recover from appellant ''the sum of $300 per year from September 25, 1936, and so long thereafter as the defendant may hold, operate, or take gas from said well on said lease.'' It was further adjudged that the appellee recover the sum of $72 as delay rentals on the excess acreage. The defendant has appealed.

The appellee has not filed a brief, though notified by the clerk of this court long after the case was submitted. In the absence of such a brief, we shall accept the statement of facts in appellant's brief as correct. Skaggs v. Ohio Valley Rock Asphalt Company, 292 Ky. 758, 166 S. W. (2d) 1005.

Appellant insists that the court erred in adjudging it indebted to appellee in the sum of $72 for delay rentals for the period of 10 years prior to the completion of the well, and it is argued that the proof is insufficient to show that the two tracts contained 7.2 acres more than the 67 acres recited in the deed, and, further, that no demand was made by appellee for rentals on the excess acreage as required by the lease. Appellee introduced

a competent surveyor who had made a survey and plat of the two tracts of land, and he testified that the two tracts contained 74.7 acres or 7.7 acres more than the acreage recited in the lease. Appellee, in his pleadings, claimed an excess of only 7.2 acres. Appellant failed to introduce any evidence to show that this survey was incorrect. Appellant's claim that under the lease the payment of delay rental on any excess acreage found to exist must begin on the date demand for payment is made cannot be sustained. The lease clearly provides that rentals in arrears shall be paid when the excess acreage is determined and demand is made. All of the delay rentals were in arrears, and demand was made when suit was filed. We think the court correctly adjudged that appellant was indebted to appellee in the sum of $72 for 10 years' delay rentals on the excess acreage. The evidence is wholly insufficient, however, to warrant the cancellation of the reduction agreement of September 25, 1936.

E. E. Clark, appellant's agent in negotiating the reduction agreement, testified that he was sent by the company to procure the reduction agreement because the well was not a paying producer with a $300 annual royalty to be paid. He explained the situation fully to appellee, and read the reduction agreement to him. Appellee declined to sign the agreement until he talked to his wife, and after consulting with her he offered to sign the agreement if the company would surrender the 20-acre tract and pay $150 royalty a year. Clark changed the agreement so as to provide for an annual royalty of $150 and that unless the 20-acre tract was surrendered or a well drilled thereon within three months the royalty reduction agreement would be of no effect. Appellee and his wife signed the agreement, which was accepted by the company, and within three months the 20-acre tract was surrendered by the company in writing. Clark explained to appellee that the well was a small producer and that unless the royalty was reduced the company would be compelled to plug it. He also told him that the tubing was being held until he made his report. He testified that when a well is drilled and it is found that the production is not sufficient to justify its operation, it is customary to reduce the royalty so as to give the lessee a margin of profit or, at least, to enable it to break even in the operation of the well. If the royalty is not reduced and the cost of operation plus the royalty exceeds the revenue from the well, it is considered a non-

paying well and is plugged and abandoned. After the royalty reduction agreement was signed the company placed tubing in the well and began to operate it. Appellee is furnished gas for his home free of cost. N. L. May, appellant's field manager, testified that he made delivery tests at various times from November 29, 1937, to November 14, 1939, which showed that the well was capable of delivering very small quantities of gas, and sometimes none at all when the pressure in the well was not sufficient to overcome the pressure in the line to which the gas was being delivered. P. E. Dufendach, general superintendent and gas production manager for appellant, testified that one of his duties was to estimate whether or not a well should be considered a commercial producer; that is, whether it produces in paying quantities. He testified as to the amount of gas produced from appellee's well up to the end of June, 1940, and stated that the production from the well showed that it was not a commercial producer and would not produce enough gas to pay the cost of operation and maintenance on a basis of $150 a year royalty, and that it had been operated by the company at a loss. Appellee testified that he had a conversation with Clark in regard to a reduction of the royalty, and that he and his wife signed an agreement in which it was provided that the royalty should be reduced from $300 to $150 a year. He accepted Clark's statement that the well was not a commercial producer, and that the company would be compelled to abandon it unless the royalty was reduced. He claimed that the well is a good producer, but he gave no facts in support of his opinion, and admitted that he did not know how much gas it produced. His witness, Henry Moore, testified that he was present when the reduction agreement was entered into, and that Clark said the well was a small producer and the company would abandon it if the royalty was not reduced. His witness, Harrison Moore, testified that he obtained one of appellant's gauges and secretly tested the well, and that the gauge showed a pressure of about 400 pounds but he did not know what that meant relative to production. Appellee's evidence fails to show that the royalty reduction agreement was procured by fraud or that Clark misrepresented the facts in any respect at the time the agreement was signed.

The judgment as to the $72 item is affirmed, and in all other respects it is reversed, with directions to enter a judgment in conformity herewith.